## COUNTY OF PROVIDENCE, MARCH TERM, 1856, AT PROVIDENCE.

PRESENT:

HON. GEORGE A. BRAYTON,
HON. ALFRED BOSWORTH.[1]

---

## WESTMINSTER BANK *v.* JAMES WHEATON.

B. C., as agent of the Sinope Mills, drew upon the Westminster Bank orders in the following form: "Providence, Oct. 10, 1854. Ninety days after date, pay to the order of J. W. four hundred and fifty dollars. Sinope Mills, per B. C., agent," which orders J. W. indorsed in blank, and the same, upon presentment to the bank, were paid.

*Held*, that from the form of the instruments, and the fact of payment by the bank, no obligation on the part of J. W. to repay the bank, in default of repayment by the drawer, could be inferred.

*Held*, also, that the above instrument is a check, and not a bill of exchange, and that days of grace are not allowable thereon, and hence, that notice of non-payment by the drawer given to J. W. as indorser, three days after the time of payment mentioned in the check, came too late.

---

[1] The resignation of Hon. Wm. R. Staples had been accepted on the 7th March, 1856, and previous to the commencement of the term.

ASSUMPSIT against the defendant as the indorser of several checks, or orders, in writing, for different sums, amounting in all to about $3,600, drawn by the Sinope Mills, per B. Cozzens, agent, upon the Westminster Bank, payable, some at sixty and some at ninety days, &c., to the order of the defendant, and by him indorsed in blank, upon the ground that the amount of said checks had been paid by the plaintiff bank to Cozzens upon the credit given to the checks by the indorsement of the defendant. Plea, the general issue. The case, originally brought in the court of common pleas for the county of Providence, had been appealed to this court, and was here submitted to the court, a jury trial having been waived, in law and fact.

The following copy of one of the checks sued is given as the form of all :—

" PROVIDENCE, Oct. 6, 1854.

WESTMINSTER BANK.

Ninety days after date, pay to the order of James Wheaton four hundred and fifty dollars —— cents.

$450.                                    SINOPE MILLS,

per B. Cozzens, Agent."

Indorsed in blank, JAMES WHEATON.

*Wm. H. Potter* for the plaintiff.

*Howard & Cozzens* for the defendant.

The facts and arguments are so fully set forth in the opinion of the court, that it is unnecessary to repeat them.

BRAYTON, J. This action is brought to recover of the defendant the amount of eight several orders in writing, as they are described in the declaration, for different sums of money. The first count alleges that the Sinope Mills, by B. Cozzens, agent, at said Providence, on the 6th day of October, A. D. 1854, drew their check or order in writing, under the hand of their said agent, directed to said Westminster Bank, and therein and thereby requested said plaintiffs, ninety days after date, to pay to the order of James Wheaton (defendant) four hundred and fifty dollars, and said defendant thereafterwards, on the same day, indorsed said order in writing under his hand, and the plaintiffs paid said sum of $450 to said defendant; and afterwards, on the 6th day of January, 1855, presented said check for payment,

and demanded payment thereof of said drawer and defendant, and the same was refused, of which said defendant had notice, &c.   The plaintiffs also counted upon seven other similar instruments.   The declaration included also the usual money counts.

On the trial, the plaintiffs offered in evidence these several orders or drafts, which were all indorsed by Wheaton, and also proved their presentment at the bank on the third day after the day fixed for payment; that the bank refused to pay them, and that notice was the same day given to Wheaton, the defendant. The plaintiffs also offered evidence (if it should be held that presentment should have been made on the day of payment fixed by the instrument offered) to show a waiver of notice by defendant, and proved that shortly after the presentment, one of the officers of the bank called on the defendant in relation to this paper, and Wheaton then said he had no funds at that time, but should have in June, and that he would attend to it, and would call to see them about it; that soon afterward he did call at the bank, and the officers of the bank commenced a conversation with him as to his general indebtedness to the bank, they having other claims against him.   At this time, in reply to them, and complaining of many losses he had met with, he proposed to pay seventy cents on the dollar, the bank to wait the result of certain settlements with other parties. This proposition was declined by the bank.   The plaintiffs also offered evidence for the purpose of proving that paper drawn in this manner was, by the settled custom in the city of Providence, entitled to the usual days of grace.   The evidence, however, failed to prove any custom as to such paper, few of the witnesses ever having known of such paper, and not being cognizant of any usage in relation to it.   It also appeared in evidence that the money was in fact paid, not to Wheaton, the defendant, but to Cozzens, the agent, who drew the checks.

The objections made by defendant's counsel against the right of the plaintiff to recover were—

I. That these instruments, upon which the plaintiffs now claim, are checks and not bills of exchange, in this general sense: that days of grace are not allowed upon checks, and as

these were not presented for payment on the day on which they arrived at maturity, they were not presented for payment within the time allowed by law, and the indorser is thereby discharged; and,

II. That the plaintiffs being the drawees of these drafts or orders, and having paid the money thereon according to the request contained in them, no suit can be maintained thereon by them; that the drafts having thereby discharged their office, all parties to them became discharged.

As this last objection goes to the foundation of the plaintiffs' action, and their right to sue at all, though it be not the first in order as made by the counsel, it may be more convenient first to consider it; because if the plaintiffs have no right to maintain their action, treating the paper either as a general bill of exchange or considering it as only that species of bill called a check, it may not be material to consider the distinction between the two.

Our inquiry then is, whether the party on whom a check or bill is drawn, having paid it to the person entitled to receive the money thereon, can maintain a suit upon it against the person to whom he has paid it.

What then is a bill or check, and what does it import? The definition as given in the books is, that it is a written request by one person who is called the drawer, directed to another person called the drawee, requesting him to pay to a third person, called the payee, a certain sum of money therein specified, at all events on request, or a day certain, or so many days after date or after presentment. What obligation does it impose upon the parties to it, or, in other words, what contract or agreement of the parties thereto does it import? By the drawing and delivery to the payee, the drawer contracts with him, and every party to whom he may indorse it over, that the drawee shall pay according to the request contained in it; that he shall pay the money according to the request, and if he refuse so to pay, the drawer, upon being duly notified of the refusal, will himself pay it. The promise is not made to the drawee, it is to him a simple request to pay. If the payee indorse it over to another, he thereby promises that other, as the drawer did by the drawing, that

the drawee shall pay according to the request in the bill, and if he do not, upon notice of his refusal, that he, the indorser, will. But his promise again is with his indorser and not with the drawee. It is still, as to him, simply a request to pay. The promise of payment by the drawer and indorser is conditional, viz : if the drawee refuse to pay, and due notice thereof be given them of such refusal, and not otherwise. If the drawee pay the bill, he has performed all he is requested to do, and all that the drawer, or indorser, stipulated that he should do. Their, and each of their contracts and promises are performed, and their contract discharged. The paper has discharged its office. The indorser does not by virtue of his indorsement to any party, engage that the drawer shall pay, or that his immediate or more remote indorser shall pay on any contingency. Neither is the drawee a person with whom any other party to the bill contracts. Neither is he any party to the bill till he accepts it. Upon his acceptance, he contracts with all the parties to it that he will pay according to its tenor. But though the acceptance binds him in favor of all other parties, it does not make him a promisee of any or either of them, any more than if he had never accepted or had refused to accept. Payment by the drawee to the party entitled to receive the money thereon is in all cases held to be a discharge of the bill, whether made before or after the maturity of the bill. If made after maturity, it can not be again put in circulation so as to be made available against any party thereto. Though, under certain circumstances, if it be paid before maturity, it may be put in circulation, and bind the parties in favor of one who comes by it *bonâ fide*, and before its maturity, and without notice of its prior payment, yet it is held to be discharged as to any holder having notice that it has been once paid, as against all the parties prior to such payment. This question, however, does not arise in this case; these bills not having been in circulation since they came to the hands of the drawees, the plaintiffs.

It has been held, that a bill drawn payable to the order of the drawee is no bill of exchange ; in effect, that the two characters of drawee and payee cannot be united in the same person and exist at the same time. Now every new indorsement of a bill

is equivalent, in legal effect, to the drawing of a new bill. The indorsement in this case, therefore, is, in legal effect, the drawing a bill upon this bank payable to the order of the bank, which, between these, is no bill.

But again, a bill may be drawn by A. upon himself, payable to his own order; and though in his hands it is no bill, yet by the indorsement, it becomes a bill payable to the indorsee, or to his order drawn upon A. But in this case it is not only a bill drawn upon A. but in legal effect it is a bill accepted by him, and may be so declared upon. The only reason is that it comes from the hands of the drawee, the person upon whom it is drawn.

In the present case, the bill has passed out of the hands of the drawer, upon payment to the person who has indorsed it; and if the same rule, for the same reason, be applied to this case, the bill could not pass from his hand (if it could pass at all) without being treated as an accepted bill on which the bank would be liable to be sued as acceptor; and if so, could never look over to any party to it. The indorsement by Wheaton, then, can in no view of the law confer upon the bank any right of action against him. But in truth the indorsement of Wheaton did not pass the bill to the bank, and it became extinguished by the act of payment by the bank in performance of the thing they were requested to do.

It is sometimes a question in these cases, whether the money paid by the drawee is paid on his own account or merely for another person, who is the person really taking the transfer of the bill. If he pays it as the mere agent of another, it does not discharge the bill; but if for himself, it is discharged; and this is the case of the present plaintiffs.

Can any other effect be given to this bill or check, or to the indorsement upon it than this? Can the legal effect be changed as to these parties. The plaintiff's counsel seem to claim that all the circumstances surrounding the transaction indicated an understanding between the parties, that Wheaton was to be in some way liable to the bank upon this paper, if the money should not be paid by the drawer, and without such understanding the bank would not have paid the money to him, and that he ought in some way to be held responsible.

It may be that the bank expected Wheaton to repay the money to them. It may be that Wheaton may in some way have favored that idea. It may be that the plaintiffs supposed that this indorsement was evidence of such an agreement; but the difficulty is, that no such agreement is embodied in the written paper, and nothing upon it imports any such contract, nor is any such contract otherwise proved.

With this determination upon the first point, it may not be necessary to consider the second objection to the recovery by the plaintiffs, viz : that this is not a bill of exchange in the more extended sense of that term, but is that species of bill called a check, and as it was not presented for payment on the day of payment the indorser was discharged.

If this be a check, then, by the rules of law, it should have been presented for payment on the very day when it became payable, and notice should have been given to the indorser of the dishonor. Evidence was offered by the plaintiffs for the purpose of showing that paper of this description, payable a certain time after date, was by the custom in Providence, where all the parties resided, allowed the usual days of grace, and that it was sufficient to present it for payment on the third day after the day of payment stated in it. The evidence offered, however, failed to prove any such custom. Few of the witnesses had seen paper so drawn, and none had so often as to be able to say that there had grown up any usage in regard to it.

Was this a check? We are of opinion that it was. A check is an order drawn upon a banker, or person acting as a banker in England, or in this country upon such a person or upon a bank. It was originally part of the definition of a check, that it was payable on demand. It was afterwards held that it might be post dated and still be a check. In such case, it was payable immediately after date, though days had elapsed since it came to the payee's hand. Still later, it was held to be a check though payable on a day certain after date, if drawn upon a bank or banker. The instrument in suit differs from the last in this only, that the day when it is payable is not named, but it is payable a certain number of days after date, and that the precise day of payment is to be ascertained by

calculation; all the elements of such calculation being contained in the paper itself. Substantially, and for all practical purposes, it is the same, since the day may be made certain from the paper itself. At this day, the only distinguishing difference between a general bill of exchange and a check is, that a check must be drawn upon a bank or upon a banker or one acting as a banker.

This being a check, should have been presented for payment, had it been in the hands of a payee, on the day when it arrived at maturity, not allowing days of grace. It was not so presented, but only on the third day after, when notice was given to Wheaton of the non-payment. This was not sufficient notice to bind him.

The plaintiffs' counsel claims that upon the evidence, notice of dishonor was waived by the defendant by his promise afterwards to pay the check.

Notice of dishonor may be waived by one entitled to notice, and a waiver would be implied from a promise to pay the bill or note; but to have that effect the promise must be an absolute and unqualified promise to pay the particular bill or note in question. In this case, the defendant made certain propositions by way of compromise,—proposed to pay 70 per cent. upon certain conditions,—but the plaintiffs declined the conditions, and so declined the promise of the defendant. There is nothing in the proof to show a waiver of notice by defendant, and as the check was not presented on the day it became due, the plaintiffs cannot recover.

*Judgment for defendant for his costs.*